IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

MARK ANTHONY REYES,            )
                               )
         Petitioner,           )
                               )
                               )   CIV-09-83-M
v.                             )
                               )
H. LEDEZMA, Warden,            )
                               )
         Respondent.           )

REPORT AND RECOMMENDATION

Petitioner, a federal prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Petitioner is challenging the decision of the United States Bureau of Prisons ("BOP") that he is ineligible for early release under 18 U.S.C. § 3621(e). Respondent has responded to the Petition, to which Petitioner has filed a Reply. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Petition be denied.

I. Background

Petitioner pled guilty in the United States District Court for the Southern District of Texas to the offense of Possession with Intent to Distribute a Quantity in Excess of 50

1

Kilograms of Marihuana. He was sentenced on April 3, 2006, to serve a term of imprisonment of 57 months. He was committed to BOP custody in January 2007 and is confined at the Federal Correctional Institution, El Reno, Oklahoma ("FCI El Reno"). Petitioner requested and was given permission to participate in a residential drug abuse program ("RDAP") at FCI El Reno in February 2007. At the time he entered the program, Petitioner was notified that he was provisionally eligible for "early release" under 18 U.S.C. § 3621(e), although he was advised that this eligibility status might change. Petitioner completed the first phase of the RDAP on December 11, 2007. In March 2008, the RDAP Coordinator at FCI El Reno completed a "change in drug abuse status" form in which the official stated that Petitioner had been expelled from the RDAP and that because of his failure to complete the program his §3621(e) early release status must be removed. The form explained that Petitioner had been expelled from the RDAP because he

> received two incident reports for stealing since February 22, 2008 and ha[d] admitted to engaging in the behaviors. He received two official warnings while in Phase 1 of RDAP, both for receiving incident reports. Based on his repeated infraction of institution rules, which is not acceptable behavior for DAP inmates, he is being expelled from the program.

Petition, Ex. 6.

In November 2008, Petitioner submitted an administrative grievance (request to staff) form to the RDAP coordinator at FCI El Reno requesting "reinstatement of my early release date." Petitioner asserted that was improperly removed from the RDAP due to a "200 series incident for stealing which does not meet the standards of [Program Statement] 5330.10

section 6.5.2." In response to his grievance, the RDAP coordinator explained to Petitioner:

> Per PS 5330.10, ch. 5, RDAP consists of 3 components: the 500 hour residential component, the transition component [and] the community transitional services component. To qualify for 3621(e) early release, an inmate must complete all 3 components of this program. You were expelled during the second component of RDAP due to repeated violations of both institution and program rules. Therefore, you do not qualify for early release.

Petition, Ex. 7 (emphasis in original). Petitioner then submitted an informal resolution form to his unit manager at FCI El Reno requesting that his "early release" date be restored or that he be reinstated to the transition phase of the RDAP. For the first time, Petitioner argued that the three-component completion rule in Program Statement 5330.10 could not be used as a reason to deny him "early release" because another inmate, Mr. Fugate, was granted early release after failing to complete the transition phase of the RDAP. Petition, Ex. 8. In response, Petitioner's counselor and unit manager advised him that "Program Statements 5330.10 and 5331.01 clearly state an inmate must complete all RDAP components, including transitional services, to be eligible for 3621(e) early release. You were expelled from RDAP, therefore, you are not eligible for early release." Id.

Petitioner next submitted an administrative remedy form to Respondent Warden Ledezma, arguing that pursuant to 28 C.F.R. § 550.58(a)(3)(ii) only "100 level prohibited acts or drugs/alcohol" can be used as reasons for denying "early release" eligibility once the 500-hour, phase-one component of the RDAP is completed. Petition, Ex. 9. Petitioner argued that because he did not commit one of these disciplinary offenses and because inmate

Fugate was granted "early release" despite having never completed the transitional phase of the RDAP, the refusal to restore his 18 U.S.C. § 3621(e) "early release" date would violate his equal protection rights. Id. Petitioner alternatively asked to be reinstated to the RDAP's transitional phase. Id.  In response, Respondent Warden Ledezma advised Petitioner that (1) pursuant to Program Statement 5330.10, the RDAP has three components, all of which must be successfully completed before the participating inmate is eligible for "early release" under § 3621(e), (2) Petitioner signed an agreement on February 23, 2007, stating he understood the three components of the RDAP and the requirements for completing the RDAP, and (3) that he was expelled from the RDAP in March 2008 due to repeated infractions of institutional rules. Thus, Respondent advised Petitioner he lost his eligibility for "early release" under 18 U.S.C. § 3621(e) because of his removal from RDAP and "not the level of incident reports for which [he] was found guilty." Response, Ex.9.

II. Petitioner's Claims

In his Petition filed January 20, 2009, Petitioner admits that he failed to complete the administrative remedy process after Respondent Warden Ledezma denied his grievance. He asserts that he "did not have time left to complete all remedies before 1-27-2009, the date he claim[s] he should be released under § 3621(e)." Petition, at 4.  Petitioner contends that requiring him to exhaust administrative remedies would be futile because his projected "early release" date of January 27, 2009, would pass prior to the completion of administrative remedies and in the interim it is likely that his request for habeas relief would become moot. Moreover, requiring him to complete the administrative remedial procedure would be futile

given the adverse grievance responses he has received from FCI El Reno officials.

Plaintiff first challenges on due process grounds the BOP's interpretation, set forth in Program Statement 5330.10, of the governing regulation, 28 C.F.R. § 550.58, to allow expulsion of inmates from the RDAP for "200 level prohibited acts as well as the all component rule." Petition, at 10. Petitioner also contends that his right to equal protection has been violated by his removal from the RDAP and the loss of his eligibility for "early release" as a result of the BOP's very different treatment of Mr. Fugate, another inmate who was granted "early release" under 18 U.S.C. § 3621(e) and who was similarly situated to Petitioner as a result of his graduation from phase one of the RDAP and his violation of RDAP rules by committing a "200 level infraction[ ] almost 3 months" after beginning the transitional phase of the RDAP.

III. Exhaustion of Administrative Remedies

Federal prisoners must exhaust administrative remedies prior to seeking federal habeas relief. Williams v. O'Brien, 792 F.2d 986, 987 (10th Cir. 1986)(*per curiam*). The expiration of Petitioner's projected "early release" date does not excuse him from exhausting administrative remedies. Petitioner was advised in March 2008 that he was being expelled from the RDAP and that he was no longer eligible for "early release" under 18 U.S.C. §3621(e) due to the expulsion. For unidentified reasons, Petitioner did not begin the administrative remedial process until November 2008.

Petitioner's alternative argument is that both of the FCI El Reno officials who reviewed his grievance denied it based on BOP policy set forth in Program Statement

5330.10, and therefore it would be futile to require him to seek further administrative relief where the administrative grievance would likely be denied based on the same policy reasons. The exhaustion "requirement is not applicable when the prisoner has no adequate remedy such that exhaustion would be futile." Wilson v. Jones, 430 F.3d 1113, 1118 (10th Cir. 2005), cert. denied, 549 U.S. 943 (2006). Although the "futility exception is narrow," the Tenth Circuit Court of Appeals has cited with approval a Ninth Circuit Court of Appeals decision in which the prisoner argued that where his administrative appeal was denied based on a published BOP policy it would be futile to require further administrative appeals. Holman v. Booker, 1998 WL 864018, *3 (10th Cir. Dec. 14, 1998)(unpublished op.)(citing Fraley v. United States Bureau of Prisons, 1 F.3d 924, 925 (9th Cir. 1998)).

Petitioner has conceded that he completed only the first step of the established administrative remedy process for federal prisoners. See 28 C.F.R. § 542.11 and 542.14. For inmates who do not obtain satisfactory relief at this step, the second step of the process allows the inmate to file an appeal with the regional director of the BOP. 28 C.F.R. § 542.15. The third, and final, step of the administrative remedy process is an appeal to the National Inmate Appeals Administrator for the Office of General Counsel. Id. Petitioner has raised due process and equal protection claims with respect to BOP decisions. He completed only the first step of the administrative review process before filing the instant Petition, and he has not shown futility excusing his admitted failure to exhaust available administrative remedies

provided by BOP.[1]  Petitioner's failure to exhaust administrative remedies does not preclude the denial of his federal habeas petition. See United States v. Eccleston, 521 F.3d 1249, 1253 (10th Cir. 2008)(court may deny habeas petition on its merits without addressing exhaustion issue), cert. denied, __ U.S. __, 129 S.Ct. 430 (2008).  Therefore, a review of the merits of his claims has been undertaken, and the review clearly shows that Petitioner is not entitled to habeas relief.

IV. 18 U.S.C. § 3621 "early release" eligibility

In an effort to motivate federal inmates to participate in substance abuse treatment programs, 18 U.S.C. § 3621(e)(2)(B) provides that prisoners convicted of a nonviolent offense who successfully complete a substance abuse program may apply for a sentence reduction of up to one year.  This statute spawned litigation by federal prisoners after BOP promulgated a regulation and a program statement delineating, as an additional category of inmates ineligible for the "early release" sentence reduction, those whose current felony offenses involved a firearm. 28 C.F.R. § 550.58(a)(1)(vi)(B).[2]  In 2001, the Supreme Court addressed the issue and determined that the statute grants the BOP discretion in determining

---

[1] The procedure for federal prisoners to follow when exhausting administrative remedies is set forth in 28 C.F.R. § 542.10-542.19.

[2] A newer version of this regulation was promulgated by the BOP in 2000.  The Tenth Circuit Court of Appeals has noted that the version of the regulation finalized on December 22, 2000, is the same as an earlier 1997 interim version, which itself spawned litigation on the basis that it had not been subjected to the notice and comment procedure required by the Administrative Procedures Act, and affirmed the district court's finding that the regulation adopted in 2000 cured any procedural irregularities in the earlier interim version. Miller v. Gallegos, 125 Fed. Appx. 934, 936, 2005 WL 256546 (10th Cir. Feb. 3, 2005)(unpublished op.).

which inmates receive the "early release" sentence reduction. Lopez v. Davis, 531 U.S. 230, 241 (2001)("When an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, ... to reduce his term of imprisonment."). Reaching the issue of whether the BOP's interpretation of the statute, set forth in its "implementing regulation" located at 28 C.F.R. § 550.58, was a reasonable exercise of the agency's discretionary authority, the Court found that "the agency's interpretation is reasonable both in taking account of preconviction conduct and in making categorical exclusions." Id. at 242.

BOP has described its RDAP in 28 C.F.R. § 550.53 as involving three components. The first is a unit-based residential program lasting at least six months and requiring a minimum of 500 hours. 28 C.F.R. § 550.53(a)(1)  There is an interim transitional phase for inmates who must participate in follow-up services at the institution after the inmate successfully completes the unit-based program, "[i]f time allows between completion of the unit-based component of the RDAP and transfer to a community-based program." 28 C.F.R. § 550.53(a)(2). The third component is the community transitional phase, when the inmate must complete a community-based drug abuse treatment program. 28 C.F.R. § 550.53(a)(3). Inmates may be removed from the RDAP for "disruptive behavior related to the program or unsatisfactory progress in treatment," although "[o]rdinarily, inmates must be given at least one formal warning before removal from RDAP." 28 C.F.R. § 550.53(g)(1) and (2). Inmates may be removed from the RDAP immediately if a disciplinary hearing officer finds that they have committed certain prohibited acts involving alcohol or drugs, violence or threats of violence, escape or attempted escape, or any "100-level series incident." 28 C.F.R.

§550.53(g)(3). In order to be eligible for early release, the inmate must successfully complete the RDAP, as described in § 550.53, including the community transitional phase. 28 U.S.C. §§ 550.55(a), 550.56(a). The BOP has also issued a program statement, P.S. 5330.10, delineating the components of the RDAP, eligibility, and circumstances and procedures for removal from the RDAP in chapter 5. Response, Ex. 4.

Petitioner's contention that his termination from the RDAP violated his due process rights is meritless. Petitioner has no liberty interest protected by the Due Process Clause in a reduced sentence. <u>Greenholtz v. Inmates of Nebraska Penal & Corr. Complex</u>, 442 U.S. 1, (1979)(holding "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence").. The statute itself, 18 U.S.C. § 3621(e), does not implicate a constitutionally-protected liberty interest because it does not mandate a sentence reduction. The notice Petitioner received stating that he was provisionally eligible for, but not entitled to, early release was also insufficient to create a constitutionally-protected liberty interest. <u>See</u> <u>Royal v. Scibana</u>, No. 08-6069, 2009 WL 247834 (10th Cir. Feb. 3, 2009)("Just as a prisoner does not possess a constitutional right to a reduction of a valid sentence, ... , a prisoner does not possess a constitutional right to retain *provisional* eligibility for the reduction of a valid sentence.")(omitting citation)(emphasis in original).

Congress mandated in § 3621 that only inmates who successfully completed the RDAP could be considered for "early release" from confinement. Congress did not define the term "successfully," thereby leaving its interpretation to the agency. "In this familiar

situation, where Congress has enacted a law that does not answer 'the precise question at issue,' all [a reviewing court] must decide is whether the Bureau, the agency empowered to administer the early release program, has filled the statutory gap 'in a way that is reasonable in light of the legislature's revealed design.'" Lopez, 531 U.S. at 242 (quoting NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 257 (1995)).

Petitioner contends that because he did not commit an offense that qualified under 28 U.S.C. § 550.53(g)(3) for his immediate removal from the RDAP he could not be removed from the program. Petitioner's contention ignores 28 U.S.C. § 550.53(g)(1) and (2), which provide for the discretionary removal of inmates from the RDAP, generally after a warning, for lack of compliance with the treatment program's behavioral rules and program requirements. When Petitioner was admitted to the RDAP, he signed a contract stating he understood "that a determination of early release for me is provisional, may change, and depends on continued positive behavior and successful participation in all components of the program, including community transitional services." Petition, Ex. 3.[3]

"An agency's interpretation of a statute by formal regulation or adjudication is entitled to deference, so long as the agency's interpretation is based upon a permissible construction of the statute." Hunnicut v. Hawk, 229 F.3d 997, 1000 (10th Cir. 2000)(quotation and citation

---

[3] Although this form is unsigned, Petitioner indicates that the "signed contract" and successful completion of the first component of the RDAP was required before he could be considered for early release. Petition, at 2. Respondent Warden Ledezma stated Petitioner signed this agreement on February 23, 2007. Petition, Ex. 9. Thus, it is assumed that Petitioner signed this contractual agreement with the BOP when he was admitted to the RDAP.

omitted). The BOP has reasonably interpreted 18 U.S.C. § 3621(e)'s requirement of "successful" completion of an RDAP to require that inmates follow the program's rules, exhibit positive behavior, and successfully complete all three phases of the RDAP before they receive § 3621(e)'s "early release" sentence reduction. The RDAP Coordinator acted well within his discretion in determining that Petitioner should be expelled from the RDAP due to his repeated misconduct offenses, which continued after he was repeatedly warned that he needed to improve his conduct. Thus, Petitioner is not entitled to habeas relief with respect to his due process claim.

Petitioner's remaining claim is based upon the Fourteenth Amendment's Equal Protection Clause. Petitioner contends that he has been subjected to disparate treatment when compared to that of one similarly situated federal prisoner, whom Petitioner alleges was granted early release despite his having received one disciplinary sanction after completing phase one of the RDAP. The Equal Protection Clause mandates that all persons who are similarly situated should be treated alike in legislative classifications or other official actions. See City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). The Equal Protection "Clause's protections apply to administrative as well as legislative acts." Engquist v. Oregon Dep't of Agri., __ U.S. __, 128 S.Ct. 2146, 2150 (2008).

"To prove that a statute has been administered or enforced discriminatorily, more must be shown than the fact that a benefit was denied to one person while conferred on another." Sylvia Development Corp. v. Calvert County, Md., 48 F.3d 810, 819 (4th Cir. 1995). "In order to prevail on an equal protection claim based upon the application of a facially neutral

11

statute, it must be establish[ed] that: (1) the plaintiff was treated differently than similarly situated persons; and (2) the defendant unequally applied the facially neutral statute for the purpose of discriminating against the plaintiff." Strickland v. Alderman, 74 F.3d 260, 264 (11th Cir. 1996).

Petitioner alleges that he was treated differently than another inmate, an allegation of "class of one" discrimination recognized in Olech v. Village of Willowbrook, 528 U.S. 562 (2000), but he has failed to show that he was intentionally treated differently without a rational basis. Petitioner has alleged only that the other inmate was removed from the RDAP due to a disciplinary infraction but was apparently later reinstated to the program and obtained his early release. Petitioner admits he was removed from the RDAP as a result of multiple misconducts for which he was sanctioned in institutional disciplinary proceedings. There may have been any number of reasons why the other inmate was allowed to return to the RDAP. In the absence of any allegations suggesting the absence of a rational explanation for the differing treatment, Petitioner has failed to allege facts sufficient to state an equal protection claim. See Jennings v. City of Stillwater, 383 F.3d 1199, 1213-1214 (10th Cir. 2004)("Looking only at one individual [for purpose of equal protection claim], however, there is no way to know whether the difference in treatment was occasioned by legitimate or illegitimate considerations without a comprehensive and largely subjective canvassing of all possible relevant factors. It is therefore imperative for the class-of-one plaintiff to provide a specific and detailed account of the nature of the preferred treatment of the favored class."); Elliott v. Cummings, 49 Fed. Appx. 220, 226-227, 2002 WL 31275344, *6 (10th Cir. Oct. 9,

2002)(unpublished op.)(upholding dismissal of prisoner's class-of-one equal protection claim where plaintiff failed to allege that the difference in treatment was intentional).

RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 be DENIED. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by     May 13th    , 2009, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this    23rd    day of   April   , 2009.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE